# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | 5:06-CR-95 (WDO) |
| ADRIAN MARTINEZ CRUZ, : | |
| : | |
| Defendant : | |

## ORDER

Defendant was indicted on August 24, 2006 and charged with one count of conspiracy to possess with the intent to distribute more than ten (10) kilograms of cocaine. Defendant has filed a motion for a bill of particulars, a motion to dismiss the indictment for lack of jurisdiction and a motion to suppress.

*Factual and Procedural Background*

On Thursday, July 27, 2006, at approximately 10:30 a.m., G.B.I. Special Agent Dell Cole spoke with Confidential Informant ("CI") #80-677 by telephone to make a three-way telephone call to JAVIER LNU. At approximately 10:32 a.m., CI #80-677 placed a three-way call to JAVIER LNU at JAVIER's cellular telephone number of 678-698-9571 with Agent Cole recording the conversation. During this conversation, CI # 80-677 stated that it wanted to purchase ten kilograms of cocaine on this date around 2:00 p.m. or 3:00 p.m. in the afternoon. JAVIER LNU stated that this would not be a problem and directed CI #80-677 to contact him whenever it was ready to go ahead and purchase the cocaine. CI

#80-672 inquired as to what area of town the transaction would take place and JAVIER LNU stated he did not care. CI #806-672 then asked JAVIER if he wanted to meet at the last location where they had met several weeks earlier, a CVS Pharmacy located off of Roswell Road in Sandy Springs, Georgia. JAVIER stated this would be okay and for CI # 80-677 to contact him when it was ready. At approximately 3:04 p.m., CI # 80-677 placed another telephone call to JAVIER LNU, reaching his voicemail. At approximately 3:06 p.m., CI #80-677 contacted JAVIER again and made contact with JAVIER. JAVIER stated that his source of supply for cocaine thought that ten kilograms was too much and would rather do a smaller amount. CI #80-677 suggested five kilograms and JAVIER stated that this would work. JAVIER then stated that his man did not want to do the transaction in public and wanted CI # 80-677 to meet him at the CVS off of Interstate 285 at Exit 22 in Sandy Springs, Georgia. From there, CI #80-677 would follow JAVIER LNU to an apartment where it could observe the drugs and JAVIER LNU would count the money. CI # 80-677 stated this would not be a problem and that he would be en-route.

All of the telephone calls were recorded by Agent Cole and eventually downloaded onto a recordable disc and placed on GBI Receipt for Property E-503073. Prior to the incident in question, Agent Cole searched CI # 80-677 and CI # 80-672 for any money and/or narcotics with negative results. CI #806-672's vehicle was also searched for any money and/or narcotics with negative results. CI # 80-677 was equipped with a HAWK Audio/Video Recording System along with a Joey digital audio recorder/transmitter. Both

units would be used to record the undercover narcotics transaction and also serve as a transmitter for law enforcement to monitor the activities of CI # 80-677 and JAVIER LNU.

At approximately 4:00 p.m., both of the devices were activated. At approximately 4:02 p.m., both CIs left the meeting location en-route to the CVS located at 6330 Roswell Road NE in Sandy Springs, Georgia. At approximately 4:07 p.m. both confidential informants arrived at the CVS and parked next to a white Ford pickup truck with a burgundy stripe bearing Georgia Tag # AEW 1834. This was the same truck the CI had previously mentioned to Agent Cole that the CI had observed JAVIER LNU in the last time they had met in person. The tag was registered to YAMIL SOLIS Castrol.

At approximately 4:11 p.m., both CIs made contact with JAVIER LNU who told them to follow him. JAVIER LNU then got into a white Crown Victoria with a Taxi Cab sign on it bearing Georgia Tag #AHW0923. A GCIC Vehicle Registration Inquiry on this tag revealed it to be registered to Nelson Monterroso-Guevara. At approximately 4:13 p.m., JAVIER LNU and the unknown taxi driver departed the parking lot. Eventually, the taxi cab pulled into the Riverbend Apartments located off of Acres Mill Road in Atlanta, Georgia. The taxi dropped off JAVIER LNU who waited for the CIs to park their vehicle. Eventually, JAVIER LNU and the CIs went into an apartment located in the 4800 building of the apartment complex. At approximately 4:25 p.m., Agent Cole and the other law enforcement officials arrived at the apartment complex and JAVIER LNU entered the 4800 building of

the apartment complex. Agent Cole observed the white Crown Victoria taxi cab parked further back at the apartment complex. After a short amount of time, the taxi driver departed the complex. While monitoring the audio surveillance device, Agent Cole heard the two CIs talking with several different Hispanic males who were located inside of the apartment. Eventually, CI # 80-672 came out of the apartment and went to its vehicle as if it was trying to obtain money to pay for the cocaine inside of the apartment. Agent Cole contacted CI # 80-672 by telephone and CI # 80-672 stated that the cocaine was inside of apartment #4822 and that law enforcement needed to secure the apartment. Agent Cole waited a short amount of time for CI # 80-677 to leave the apartment before it was secured. At approximately 4:34 p.m., Agent Cole observed CI # 80-677 coming out of an upstairs apartment. Agent Cole contacted CI # 80-677 by phone and CI # 80-677 stated that the apartment number was 4822, which was on the second floor of the building.

After receiving this information, Agent Cole and the other law enforcement officials initiated contact with the Hispanic males and secured the apartment. Upon making contact with the individuals at the apartment, four Hispanic males were observed fleeing the apartment, with three of them heading South at the back of the apartment and one Hispanic male running North. The Hispanic male running North was eventually secured by DEA Agent Jeremy Horne and was determined to be JAVIER LNU. As the Hispanic males were being pursued, Agent Cole noted an orange Fanta 12-pack box lying on the ground directly below the rear balcony of Apartment 4822 and observed two kilograms of cocaine inside the

4

box. This cocaine was eventually photographed and seized by DEA Agent Hubert Jordan. The apartment was cleared and no other individuals were found within. The apartment was then secured.

Agent Cole made contact with Marietta/Cobb/Smyrna Narcotic Agent Charles Engle via telephone because the apartment complex was located in Cobb County, Georgia. Agent Cole briefed Agent Engle of the circumstances of securing the apartment and the narcotics that had been located outside of the apartment. Agent Engle stated that he would go ahead and prepare
a search warrant to be signed by a judge from Cobb County, Georgia. Agent Cole stated that the apartment would be secured and no search would take place until a search warrant had been obtained by Agent Engle.

While waiting for the search warrant to be secured, JAVIER LNU was brought back to the apartment where he was questioned as to his real identity. JAVIER LNU had a Mexican photographic identification in his wallet which revealed him to be Adrian Martinez Cruz. Cruz declined to make a statement and was not questioned any further. A search of Cruz's wallet revealed $2,300.00 in U.S. Currency. Also found on Cruz was the Motorola cellular telephone bearing the number 678-698-9571 that was seized by DEA Agent Hubert Jordan. While obtaining identification data from Cruz, Cruz stated that his home telephone number was 404-250-1189. This home telephone number matched the home telephone number from the subscriber information that had been obtained by for cellular number

5

678-698-9571.

At approximately 7:30 p.m., Agent Cole made contact with Agent Engle at the apartment. Accompanying Agent Engle were Cobb County Narcotic Agents Perry Dulworth and Lieutenant Dong Fant. Agent Engle provided Agent Cole with a copy of the search warrant that had been signed for apartment 4822. After receiving the search warrant, Agent Cole and the other law enforcement officials searched the apartment. During the search, it was noted that in the refrigerator and also on a table in the breakfast area of the apartment there were several orange Fanta soda cans. These were the same type of soda cans that would have been placed in the Fanta 12-pack box containing the two kilograms of cocaine that was found outside of the apartment. A coat closet directly in front of the front door of the apartment was also searched. Located in the closet was a set of digital scales along with a cardboard box containing several items of evidentiary value including approximately five bags of methamphetamine. These bags contained what appeared to be "crystal" methamphetamine and regular, dark methamphetamine. Also found was an aluminum cook pot which contained a thick layer of methamphetamine residue around the bottom and sides. It appeared that this pot had been used to convert regular, dirty methamphetamine into "crystal" methamphetamine. All of these items were seized by DEA Agent Hubert Jordan. A further search of the apartment revealed in a back bedroom closet several identification cards for Manuel Rios Garcia and Jose Antonio Campos-Vega, a resident alien card, a social security card and an international drivers license for Manuel Rios Garcia whose listed date

of birth on the resident alien card was 04/12/1987 and whose listed date of birth on the international drivers license was 04/12/1985. A resident alien card for Jose Antonio Campos-Vega was discovered with a date of birth of 01/17/1984. The social security card for Manuel Rios Garcia had a social security card number of 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. All of these items were seized by DEA Agent Hubert Jordan.

*Motion for Bill of Particulars*

Defendant contends that the acts alleged in the indictment are presented in a vague and cursory language, making the formulation of a "viable and cogent defense impossible." The indictment charged Defendant and others with conspiracy to possess with the intent to distribute cocaine in violation of Title 21 United States Code, Section 846, i/c/w Title21 United States Code Section 841(a)(1). The allegations set forth in the indictment track the language of the respective code violations.

"The purpose of a true bill of particulars is threefold: 'to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense.'" United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986) (citations omitted). "A bill of particulars, properly viewed, supplements an indictment by providing the defendant with information necessary for trial preparation. Generalized discovery, however, is not an appropriate function of a bill of particulars and is not a proper purpose in seeking the bill."

The indictment in the case at bar is more than sufficient to inform the Defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize any surprise at trial and to enable him to plead double jeopardy in the event of a later prosecution for the same offense. Defendant is using the vehicle of his motion for a bill of particulars as a discovery tool which is not an appropriate function of a bill of particulars. Further, the Government has provided the Defendant with the audio tapes, lab report and incident reports which relate to the charged offense. Defendant's motion for a bill of particulars is therefore DENIED.

### *Motion to Dismiss for Lack of Jurisdiction*

Defendant filed a motion to dismiss the indictment that alleges a conspiracy in the Middle District of Georgia because he contends the Government failed to allege an overt act that actually occurred in the Middle District of Georgia. When the case was presented to the grand jury, Agent Dell Cole gave the following testimony:

Q. State your name for the record.

A. My name is Dell Cole. I'm a special agent with the Georgia Bureau of Investigation in Macon, Georgia.

Q. You investigated this case against Mr. Adrian Martinez Cruz, is that right, sir?

A. Yes, sir.

Q. Tell us how y'all began investigating Mr. Cruz. What led y'all to focus on him, please?

A. During the course of this investigation, I had several confidential

informants who were familiar with an Hispanic male in the Atlanta, Georgia area by the name of Javier. Over the past three years, Javier had supplied one of the CI's brother with multiple, multiple kilograms of cocaine. The CI's brother lived in the Tifton, Georgia and then Valdosta, Georgia area for a while. He would drive up to Atlanta, meet with Javier and initially started purchasing one to two kilograms of cocaine at a time and eventually worked his way up to 15 to 25 every two weeks. The cocaine would come back down here to the Middle District, and eventually, Javier himself would transport the cocaine down to Valdosta. There were other CIs, one out of Albany, Georgia, who also knew another guy who was obtaining multiple kilograms of cocaine through Javier which was transported down to Albany, also.

Q. And this all began on or about January of 2003, is that right, sir?

A. Yes, sir.

Q. And during this time period, he was transporting cocaine and also selling cocaine to others that were bringing it back to the Middle District; is that right, sir?

A. Yes, sir.

Q. And he would transport it sometimes himself to the Middle District of Georgia?

A. Yes, sir.

The court of appeals has instructed,

A conspiracy may be prosecuted in the district where it was formed or in any district where an overt act was committed in furtherance of its objects. An overt act may be that of only a single one of the conspirators and need not be itself a crime. An individual conspirator need not participate in the overt act in furtherance of the conspiracy. Once a conspiracy is established, and an individual is linked to that conspiracy, an overt act committed by any conspirator is sufficient.

United States v. Schlei, 122 F.3d 944, 975 (11th Cir. 1997) (citations omitted). Based on Agent Cole's grand jury testimony, the indictment in the case at bar is clearly based on criminal conduct which took place in several divisions of the Middle District of Georgia. Defendant's motion to dismiss for lack of jurisdiction is therefore DENIED.

*Motion to Suppress*

Defendant Cruz filed a motion to suppress the evidence found at the apartment. Although Defendant recited some of the Fourth Amendment standards for determining whether a search and seizure are reasonable, Defendant failed to present any evidence or argument regarding *why* the evidence in this case should be suppressed. Nevertheless, the Court notes two important factors involved in this case that establish the motion to suppress has no merit: standing and abandonment of the drugs. Defendant failed to present any evidence that he had standing to contest the search and seizure in question because he failed to show that he had any interest, possessory or otherwise, in the searched premises, the areas adjacent to the apartment or the box that was found that contained the drugs. The two Hispanic males who resided at the apartment are the only parties who would arguably have standing to contest the search and, as argued by the Government, Defendant's only connection with the searched premises is that he used the apartment as the location to consummate a drug deal. See United States v. Sneed, 732 F.2d 886, 888 (11th Cir. 1984) (The threshold issue in deciding a motion to suppress is whether a defendant has standing to contest the matter; that is, whether the defendant has a legitimate expectation of privacy in

the premises searched.). Further, the drugs found outside the apartment in the soda can box were clearly abandoned by the other fleeing suspects. United States v. Cofield, 272 F.3d 1303, 1306 (11th Cir. 2001) ("In determining whether there has been abandonment, the 'critical inquiry is whether the person prejudiced by the search voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.'") (citations omitted). Because Defendant failed to establish standing to contest the search and seizure of the evidence and the drugs from the soda box were clearly abandoned, the motion to suppress is DENIED.

       **SO ORDERED this 13th day of March, 2007.**

       **S/**
**WILBUR D. OWENS, JR.**
**UNITED STATES DISTRICT JUDGE**